The **LOVELL CLAY PRODUCTS COM-PANY, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4073.**

United States District Court
D. Wyoming.

Aug. 20, 1957.

Henry A. Burgess, R. E. Holstedt and Harry F. Schwartz, Sheridan, Wyo., for plaintiff.

John F. Raper, U. S. Atty., William G. Walton, Asst. U. S. Atty., Cheyenne, Wyo., and Thomas H. Foye, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

KERR, District Judge.

This matter came on regularly for hearing before this Court on the 15th day of July, A. D. 1957, upon the Plaintiff's motion for summary judgment and supporting affidavit and Defendant's cross motion for summary judgment and supporting affidavit and the pleadings filed herein; the Court proceeded to hear and determine said matter and upon conclusion of argument by counsel for both parties, the Court being fully ad-

vised in the premises, makes the following findings of fact and conclusions of law:

### First Cause of Action
### Findings of Fact.

I

That during all times mentioned herein the Plaintiff was a corporation organized and doing business under the laws of the state of Wyoming, with its principal place of business at Lovell, Wyoming, and was authorized to do business at Billings, Montana. At both Lovell and Billings, the Plaintiff operated plants producing and selling brick and tile and sewer pipe.

II

Plaintiff has kept its books on the accrual basis method of accounting, on a calendar year basis, and within the time prescribed by law, Plaintiff made and filed its income tax return for the calendar year of 1951 showing an income tax liability of $61,356.69 and excess profits tax liability of $14,605.53, making a total of $75,962.22, which amount was duly paid to the Defendant. That on February 11, 1955, Plaintiff duly filed with the Defendant, at Cheyenne, Wyoming, a claim for refund of income tax for 1951 on the grounds that under section 114 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 114, Plaintiff was entitled to a percentage depletion deduction on its deposit of brick and tile clay computed on the selling price, f. o. b. plant, loaded for shipment, of burnt brick, tile, and sewer pipe which is produced from its deposits of clay. On September 26, 1955, the claim for refund made by the Plaintiff for the year 1951, filed on February 11, 1955, was denied and the Defendant mailed such notice of disallowance of claim for refund as required by law.                 ,

III

In 1951, Plaintiff owned and operated a clay pit located in Big Horn County, Wyoming, *new* Lovell, Wyoming, and was engaged in the business of mining clay from this pit and making brick, tile and sewer pipe from such clay in a plant at Lovell, Wyoming. That at Billings, Montana, Plaintiff owned a clay pit located in Yellowstone County, Montana, near Billings, Montana and was engaged in the business of mining clay from that pit and making brick and tile in the plant at Billings, Montana. That in 1951, Plaintiff's receipts from the sale of brick, tile and sewer pipe which were produced from the clay pits at both locations was in the amount of $453,247.43. Five per cent (5%) of such amount, $22,662.37, is less than fifty per cent (50%) of the net income from such sales and is the amount claimed by the Plaintiff as percentage depletion deduction. That if Plaintiff had been allowed such deduction for depletion it would have reduced the income tax payable by said Plaintiff in the amount of $18,299.86 for the year 1951. That Plaintiff's suit for refund of taxes paid for the year 1951 was commenced within the time allowed by law.

IV

Plaintiff sells the clay which it mines only in the form of burnt brick, tile and sewer pipe, and there is no market for Plaintiff's clay until it is put into the form of burnt brick or tile or sewer pipe. Of all the clay mined in the United States for the use in making brick, tile and kindred products, there is opportunity for the sale of only a negligible quantity before it is put in the form of burnt brick, tile or kindred products, and the owners and operators of clay pits in which clay is mined for use in making brick, tile and other kindred products normally must process such clay into burnt brick, tile or kindred products, in order to obtain a product which they can market commercially.

V

That in the early part of 1956 the Plaintiff was contacted in regard to a nationwide sales survey being made by the Internal Revenue Service to determine the amount of brick and tile clay sold before it is processed into burnt clay products. The survey shows 5 purchasers and 9 sellers of such clay during the five year period, 1951–1955. The Bureau

of Mines of the United States Government has prepared figures showing the total quantity of brick and tile clay products in the United States for the years 1951 and 1952. The results of this survey in respect of said years is as follows:

| Year | Total Nat'l Production (Used and Sold) | Total Sold* | Per Cent of Nat'l Production | Sales bet. Unrelated Parties | Per Cent of Nat'l Production |
|------|------|------|------|------|------|
| 1951 | 19,126,414 | 126,722 | 0.66% | 21,570 | 0.11% |
| 1952 | 17,587,646 | 93,584 | 0.53% | 15,967 | 0.09% |

*Sold before being processed into burnt clay products.

---

## VI

That at the request of the Department of Justice, the Bureau of Mines of the United States Government has specifically computed for the years 1951 and 1952, the tons of brick and tile clay sold by the producers of such clay before the same is made into burnt brick and tile and kindred products, which figures are based upon information obtained by the Bureau of Mines from questionnaires distributed to the miners of such clay. The results of such computation of the Bureau of Mines are as follows:

| Year | Total Nat'l Production (Used and Sold) | Total Sold | Per Cent of National Production |
|------|------|------|------|
| 1951 | 19,126,414 | 84,402 | 0.44% |
| 1952 | 17,587,646 | 230,295 | 1.31% |

---

## VII

As the above surveys show, of the brick and tile clay mined in the United States, there is opportunity for the sale of only a negligible quantity before it is put into the form of burnt brick, tile and kindred products, that of the brick and tile clay mined by the Lovell Clay Products Company, there is no opportunity for the sale of any clay before it is put into the form of burnt brick or tile.

## VIII

The following were the processes applied by Plaintiff to the clay in order to put it into the form of burnt brick, tile and sewer pipe, which processes were common to its two plants:

(a) Clay was mined by a caterpillar type tractor loaded by a front end loader onto trucks, which carried the clay to the plant.

(b) At the Plant the clay was dumped from trucks into a bin from where it went to a crusher and thence on to a dry pan grinder which reduced the chunks of clay to a size suitable for screening.

(c) Clay was discharged from the dry pan crusher onto an elevator belt which carried it to a screen.

(d) The clay passed through the screen into a bin and from the bin the clay passed into a feeder.

(e) The clay was discharged from the feeder into pug mill which is a machine wherein water is added as final tempering process.

(f) From the pug mill the clay passed into a machine wherein the

evacuation chamber evacuated the air from the clay, which was then extruded under pressure into the various shapes of bricks, tiles, or pipes. The extruded clay was then cut into units of the desired size.

(g) The clay units were then stacked on dryer cars, the cars were moved to dryer tunnels, where the free water was evaporated by gas heat.

(h) When the free water was removed from the clay, the units were stacked in kilns where gas fires burned the units.

(i) The burnt brick, tile, and pipe was then removed from the kilns and loaded for shipment to purchasers.

## IX

The processes listed in the preceding paragraph are the ordinary ones by which clay generally is extracted from the ground and processed into brick, tile, and kindred products.

## X

For the year 1951 the Plaintiff realized the amount of $453,247.43, from the sale of brick, tile and sewer pipe which it produced. Five per cent (5%) of such amount, $22,662.37, is less than 50% of the net income from such sales.

### Conclusions of Law.

## I

This Court has jurisdiction of this case under Sections 1346(a) (1) of Title 28 of the United States Code, Act of June 25, 1948, c. 646, 62 Stat. 869, 933, as amended by the Acts of July 30, 1954, c. 648, § 1, 68 Stat. 589.

## II

The clay mined by plaintiff is "brick and tile clay" within the meaning of Section 114(b) (4) (A) of the Internal Revenue Code of 1939, as amended by Section 145 of the Revenue Act of 1942 (c. 619, 56 Stat. 798, and Section 319(a) of the Revenue Act of 1951, C. 521, 65

Stat. 452, and Plaintiff is entitled to a deduction for depletion under that Section and Section 23(m), 26 U.S.C.A. § 23(m), computed at the rate of 5% of its "gross income from the property."

## III

■ Under Section 114(b) (4) (B) of the Internal Revenue Code 1939, as amended, "gross income from the property" includes all of the income from the extraction of the brick and tile clay from the ground and from the ordinary treatment processes which a miner of such clay must normally apply to the clay in order to obtain a product which can be marketed commercially.

## IV

All of the processes applied by Plaintiff to its brick and tile clay in order to obtain burnt brick, tile and sewer pipe, are, within the meaning of Section 114 (b) (4) (B) of the Internal Revenue Code of 1939, as amended, the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products. To the extent that Treasury Regulations 118, Section 39.23(m)–1 (f), exclude any of the processes applied by plaintiff to its clay to obtain burnt brick and tile from the statutory term "ordinary treatment processes", said Regulations are invalid.

## V

For the year 1951, Plaintiff is entitled to a deduction for depletion in the amount of $22,662.37, which amount is equal to 5% of the amount realized from the sale of its burnt brick and tile in such year.

## VI

Plaintiff has overpaid its income tax for 1951 in the amount of $18,299.86, and is entitled to recover from Defendant such amount, together with interest thereon from the date of December 13, 1952, which was the last date of payment thereof, as provided by law.

Second Cause of Action
Findings of Fact.

I

That during all times mentioned herein the Plaintiff was a corporation organized and doing business under the laws of the State of Wyoming, with its principal place of business at Lovell, Wyoming, and was authorized to do business in Montana, having a place of business at Billings, Montana. At both Lovell and Billings, the Plaintiff operated plants producing and selling brick and tile and sewer pipe.

II

Plaintiff has kept its books on the accrual basis method of accounting, on a calendar year basis and within the time prescribed by law, Plaintiff made and filed its income tax return for the calendar year of 1952 showing an income tax liability of $56,049.82, and excess profits tax liability of $8,840.15, making a total of $64,889.97, which amount was duly paid unto the Defendant, the last payment being made on November 30, 1953. In such return, Plaintiff claimed a deduction of $2,660.41 as depletion on his deposit of brick and tile clay. That on March 9, 1956, Plaintiff duly filed with the Defendant at Cheyenne, Wyoming, a claim for refund of income tax for the year 1952, on the grounds that under section 114 of the Internal Revenue Code of 1939, Plaintiff was entitled to a percentage depletion deduction on its deposit of brick and tile clay, computed on the selling price, f. o. b. plant, loaded for shipment, of burnt brick, tile, and sewer pipe which it produces.

III

Defendant caused said income tax return, claim for refund, and amended return to be examined, and as a result of such examination the Defendant allowed the depletion deduction of $2,660.41 computed as 5% of 8% of the selling price of Plaintiff's burnt brick, tile and pipe, but disallowed the claim for refund in the amount of $17,668.50. Such claim for refund for the year 1952, was filed on March 9, 1956, and disallowance thereof was given by the Defendant as provided by law on July 11, 1956.

IV

In 1952 Plaintiff owned and operated a clay pit located in Big Horn County, Wyoming, near Lovell, and was engaged in the business of mining clay from this pit and making brick, tile, and sewer pipe from such clay in a plant at Lovell, Wyoming. That at Billings, Montana, Plaintiff owned a clay pit located in Yellowstone County, Montana, near Billings, Montana, and was engaged in the business of mining clay from that pit and making brick and tile in a plant at Billings, Montana. That in 1952, Plaintiff's receipts from the sale of brick, tile and sewer pipe which were produced from the clay pits at both locations was in the amount of $484,147.19. Five per cent (5%) of such amount, $24,207.36, is less than 50% of the net income from such sales and is the amount claimed by the Plaintiff as a percentage depletion deduction. That if Plaintiff had been allowed such deduction for depletion it would have further reduced income tax payable by said Plaintiff in the amount of $17,-668.50 for the year of 1952. That Plaintiff's claim for refund made for the year 1952 was disallowed on July 11, 1956, and this action was commenced within the time allowed by law to recover such refund.

V

Plaintiff sells the clay which it mines only in the form of burnt brick, tile and sewer pipe, and there is no market for Plaintiff's clay until it is put into the form of burnt brick or tile or sewer pipe. Of all the clay mined in the United States for use in making brick, tile and kindred products, there is opportunity for the sale only of a negligible quantity before it is put in the form of burnt brick, tile or kindred products, and the owners and operators of clay pits in which clay is mined for use in making brick, tile and other kindred products normally must process such clay into burnt brick, tile or kindred products in

order to obtain a product which they can market commercially.

### VI

That in the early part of 1956 the Plaintiff was contacted in regard to a nationwide sales survey being made by the Internal Revenue Service to determine the amount of brick and tile clay sold before it is processed into burnt clay products. The survey shows 5 purchasers and 9 sellers of such clay during the five-year period, 1951–1955. The Bureau of Mines of the United States Government has prepared figures showing the total quantity of brick and tile clay products in the United States for the years 1951 and 1952. The results of this survey in respect of said years is as follows:

| Year | Total Nat'l Production (Used & Sold) | Total Sold* | Per Cent of Nat'l Production | Sales bet. Unrelated Parties | Per Cent of Nat'l Production |
|------|------|------|------|------|------|
| 1951 | 19,126,414 | 126,722 | 0.66% | 21,570 | 0.11% |
| 1952 | 17,587,646 | 93,584 | 0.53% | 15,967 | 0.09% |

*Sold before being processed into burnt clay products.

### VII

That at the request of the Department of Justice, the Bureau of Mines of the United States Government has specifically computed for the years 1951 and 1952, the tons of brick and tile clay sold by the producers of such clay before the same is made into burnt brick and tile and kindred products, which figures are based upon information obtained by the Bureau of Mines from questionnaires distributed to the miners of such clay. The results of such computation of the Bureau of Mines are as follows:

| Year | Total Nat'l Production (Used & Sold) | Total Sold | Per cent of National Production |
|------|------|------|------|
| 1951 | 19,126,414 | 84,402 | 0.44% |
| 1952 | 17,587,646 | 230,295 | 1.31%. |

### VIII

As the above surveys show, of the brick and tile clay mined in the United States, there is opportunity for the sale of only negligible quantity before it is put into the form of burnt brick, tile and kindred products, that of the brick and tile clay mined by the Lovell Clay Products Company, there is no opportunity for the sale of any clay before it is put into the form of burnt brick or tile.

### IX

The following were the processes applied by the Plaintiff to the clay in order to put it into the form of burnt brick, tile and sewer pipe, which processes were common to its two plants:

(a) Clay was mined by a caterpillar type tractor, loaded by a front end loader onto trucks, which carried the clay to the plant.

(b) At the plant the clay was dumped from trucks into a bin from where it went to a crusher and thence on to a dry pan grinder which reduced the chunks of clay to a size suitable for screening.

(c) Clay was discharged from the dry pan crusher onto an elevator belt which carried it to a screen.

(d) The clay passed through the screen into a bin and from the bin the clay passed into a feeder.

(e) The clay was discharged from the feeder into the pug mill which is a machine wherein water is added as a final tempering process.

(f) From the pug mill the clay passed into a machine wherein the evacuation chamber evacuated air from the clay, which was then extruded under pressure into the various shapes of bricks, tiles, or pipes. The extruded clay was then cut into units of the desired size.

(g) The clay units were then stacked on dryer cars, which were moved to dryer tunnels, where the free water was evaporated by gas heat.

(h) When the free water was removed from the clay, the units were stacked in kilns where gas fires burned the units.

(i) The burnt brick, tile, and pipe was then removed from the kilns and loaded for shipment to purchasers.

## X

The processes listed in the preceding paragraph are the ordinary ones by which clay generally is extracted from the ground and processed into brick, tile, and kindred products.

## XI

For the year 1952, the Plaintiff realized the amount of $484,147.19 from the sale of brick, tile and sewer pipe which it produced. Five per cent (5%) of such amount, $24,207.36, is less than 50% of the net income from such sales. The Defendant herein has allowed a deduction for percentage depletion for the year 1952 in the amount of $2,660.41, which is $17,668.50 less than the 5% of the amount realized from the sale of said brick, tile and sewer pipe by the Plaintiff during said year.

Conclusions of Law.

### I

This Court has jurisdiction of this case under Sections 1346(a) (1) of Title 28 of the United States Code, Act of June 25, 1948, c. 646, 62 Stat. 869, 933, as amended by the Act of July 30, 1954, c. 648, § 1, 68 Stat. 589.

### II

The clay mined by Plaintiff is "brick and tile clay" within the meaning of Section 114(b) (4) (A) of the Internal Revenue Code of 1939, as amended by Section 145 of the Revenue Act of 1942, c. 619, 56 Stat. 798, and Section 319(a) of the Revenue Act of 1951, c. 521, 65 Stat. 452, and Plaintiff is entitled to a deduction for depletion under that Section and Section 23(m), computed at the rate of 5% of its "gross income from the property."

### III

Under Section 114(b) (4) (B) of the Internal Revenue Code of 1939, as amended, "gross income from the property" includes all of the income from the extraction of the brick and tile clay from the ground and from the ordinary treatment processes which a miner of such clay must normally apply to the clay in order to obtain a product which can be marketed commercially.

### IV

All of the processes applied by Plaintiff to its brick and tile clay in order to obtain burnt brick, tile and sewer pipe, are within the meaning of Section 114 (b) (4) (B) of the Internal Revenue Code of 1939, as amended, the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products. To the extent that Treasury Regulations 118, Section 39.23(m)–1 (f), exclude any of the processes applied by Plaintiff to its clay to obtain burnt brick and tile from the statutory term "ordinary treatment processes", said Regulations are invalid.

### V

For the year 1952, Plaintiff is entitled to a deduction for depletion in the amount of $24,207.36, which amount is equal to 5% of the amount realized from the sale of its burnt brick and tile in such year.

### VI

Plaintiff has overpaid its income tax for 1952, in the amount of $17,668.50, and is entitled to recover from the Defendant such amount, together with interest thereon from the date of November 30, 1953, which was the last date of payment thereof, as provided by law.

Let judgment be entered accordingly.